LEE et al. v. SUPREME COUNCIL, CATHOLIC BENEV. LEGION.

(Supreme Court, Appellate Division, Fourth Department. September Term, 1901.)

**1. LIFE INSURANCE—AGE OF DECEASED—SUFFICIENCY OF EVIDENCE.**

In an action on a life policy, where the sole issue was whether deceased was born in 1836, or in 1846, as stated in his application, several witnesses for defendant company testified that deceased was born in a certain parish in T., Ireland, and was the son of L. and wife, whose maiden name was P., but that there were several families by the name of L. and P. residing in that parish. The parish priest testified to entries in the parish register showing that "deceased was the son of Daniel and Nora Lee, and was baptized in 1836," and giving names of deceased's brothers and sisters. For plaintiff, relatives of deceased testified that the first child of deceased's parents died in infancy, and was baptized by the same name as deceased, and that they knew deceased's brothers and sisters, and did not give their names as they appeared on the parish register. *Held,* that the evidence raised such an issue of fact as to whether deceased was not the second son baptized under the same name, or was the son of a different Daniel and Nora Lee, that the verdict of a jury thereon for plaintiff would not be interfered with for insufficiency of evidence.

**2. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE.**

A new trial on the ground of newly-discovered evidence will not be granted, where the evidence is merely cumulative, and it is improbable that it would have changed the result had it been in the case.

Appeal from trial term, Onondaga county.

Action by Catherine Lee and others against the Supreme Council, Catholic Benevolent Legion. From a judgment for plaintiffs, and from orders denying motions for a new trial made on the minutes and on the ground of newly-discovered evidence, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Edwin C. Low, for appellant.

Julie R. Jenney, for respondents.

ADAMS, P. J. On the 22d day of February, 1894, Pierce Lee, the father of the plaintiffs, made application in due form for membership in the defendant's council, and in connection therewith declared and warranted as true every statement made by him upon such application. Among his other statements, he declared that he was born in Ireland, county of Tipperary, on the 26th day of January, 1846, and that he was consequently between 48 and 49 years of age. The application was accepted, and Lee thereupon became a member of the defendant, which is a fraternal benevolent organization, doing an insurance business upon the assessment plan. Thereafter, and in December, 1898, Pierce Lee died at the city of Syracuse. Proof of death was thereupon duly filed, and a demand made for the payment of the benefit certificate, which was refused, and in October, 1899, this action was commenced. The case was tried at the Onondaga trial term on the 11th day of December, 1900, and a verdict in favor of the plaintiffs was rendered. Thereafter a motion for a new trial

was made on the minutes of the court, which was denied, and subsequently a motion for a new trial, upon the ground of newly-discovered evidence, was also made, which was likewise denied.

The sole question litigated upon the trial was the correctness of the statement made by Pierce Lee as to his age, it being contended on the part of the defendant that he was born in 1836 instead of 1846; and evidence to sustain this contention was given, mainly through the medium of commissions issued to witnesses residing at Upper Church, in the county of Tipperary, Ireland. One of these witnesses, William Corcoran, the parish priest, testified to entries made in the parish register, and, among other things, stated that Daniel Lee and his wife, whose maiden name was Honora, or Nora, Phelan, were the parents of the following-named children, viz.: Pierce Lee, who was baptized August 23, 1836; Thomas Lee, who was baptized April 26, 1838; Bryan Lee, who was baptized January 25, 1840; Mary Lee, who was baptized May 16, 1841; William Lee, who was baptized February 12, 1843; Bridget Lee, who was baptized April 16, 1844, and Honora Lee, who was baptized March 28, 1846. This witness also testified that there were numerous families by the name of Lee and Phelan residing within his parish. William Ryan, another witness residing in Ireland, testified that he knew Pierce Lee, who had formerly resided in the parish of Upper Church, and who subsequently emigrated to America and lived in the city of Syracuse; that he was first cousin to Pierce Lee, and that before he left Ireland he worked with him, and saw him almost daily; that he knew that the name of his father was Daniel Lee, and of his mother Nora Phelan; that he (the witness) at one time resided in America for about eight years, and lived with Pierce Lee in his house. This witness, upon cross-examination, stated that he was sure Pierce Lee was baptized in the parish of Upper Church, but he could not say by whom, nor could he state the age of Pierce Lee when he left Ireland. He also testified that there were several families by the name of Lee and Phelan residing in the parish of Upper Church, and that of his own knowledge he knew that the Pierce Lee who died at Syracuse in December, 1898, was the son of Daniel and Nora Lee, of Upper Church; but, in response to a question from plaintiff's counsel, he said: "I cannot swear exactly that he was not born 26th January, 1846." Tobias Burke, another witness living in the county of Tipperary, testified that he went to school with Pierce Lee, and saw him frequently, and that, if Pierce Lee were living at the time of the trial, he would be about 60 years of age, which, if true, would make the time of his birth 1840. Catharine Lee, another witness examined by interrogatories on behalf of the defendant, testified that she resided in the county of Tipperary; that she knew Daniel Lee, and that he was married to "Norry Phelan." She was a second cousin of Pierce Lee, and heard of his going to America. These were the principal witnesses called on behalf of the defendant to sustain the contention that Pierce Lee was born in 1836. To meet this evidence, the plaintiff called one Michael Whalen, who lived in the city of Syracuse, who said that he would be 65 years of age the following spring;

that he was second cousin to Pierce Lee, and knew him in Ireland before coming to this country in 1858; and that at that time Pierce Lee was about 5 years of age, as near as he could tell. He also testi-fied that he understood that there was another Pierce Lee born to Daniel and Honora Lee; that he was the first child, and died in infancy; that he was acquainted with Patrick Lee, who was an older brother of Pierce Lee, and also with his sisters Hannah, Mary, Bridget, and Margaret, which, if true, would tend to prove either that Pierce Lee was not the son of the Daniel Lee and Nora Phelan re-ferred to in the parish register and in the testimony of the parish priest, or that the entries in that register were inaccurate and unre-liable; for there is nothing in that record to indicate that Daniel and Nora Lee had a son by the name of Patrick, or any daughters by the name of Hannah or Margaret. Patrick Lee was called as a wit-ness on behalf of the defendant, and testified that he was a brother of Pierce Lee; that he was born in Ireland, in the parish of Drumbane, of which parish Upper Church is a part, and that his father's name was Daniel Lee and his mother's name "Norrie Whalen." The evidence, therefore, taken as a whole, presented a distinct issue of fact, which was submitted to the jury in a fair charge by the trial justice, and they found in favor of the plaintiffs. We do not well see how this verdict can be disturbed; for the evidence, while perhaps not alto-gether satisfactory, is sufficient to support the conclusion that either Pierce Lee was not the son of Daniel Lee and Nora "Phelan," or else that he was a second son of these parents who was named "Pierce," and that in either case he was no older than he represented himself to be at the time of making the application for membership in the defendant.

An examination of the exceptions to the admission or rejection of evidence fails to disclose any prejudicial error.

Upon the motion for a new trial upon the ground of newly-discov-ered evidence, affidavits were read tending to show that the names of Whalen and Phelan were synonymous in Tipperary county, and that Daniel Lee's wife was known in the parish of Upper Church as Nora Whalen, although her name was frequently spelled "Phelan." There were also affidavits tending to contradict to some extent some por-tions of the evidence of Mrs. Maloney and Patrick Lee, the sister and brother of Pierce Lee; but all the newly-discovered evidence is merely cumulative, and we doubt very much whether, if it had been in the case, it would have changed the result. It follows, therefore, that the judgment and order denying the motion for a new trial on the minutes should be affirmed, with costs, and the order denying the motion for a new trial upon the ground of newly-discovered evidence should also be affirmed, with $10 costs and disbursements. All con-cur.